E-FILED
Friday, 31 July, 2026  10:42:14 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| CHILD EVANGELISM FELLOWSHIP OF ILLINOIS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:26-cv-04038-SLD-RLH |
| | ) | |
| MOLINE-COAL VALLEY SCHOOL DISTRICT NO. 40, RACHEL SAVAGE, and MOLINE-COAL VALLEY DISTRICT NO. 40 BOARD OF EDUCATION, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

ORDER

This is a case about religious discrimination by Defendants Moline-Coal Valley School District No. 40 (the "District"), the District's Board of Education, and Rachel Savage, the District Superintendent, against Plaintiff Child Evangelism Fellowship of Illinois, Inc. ("CEF"). CEF brought suit for violations the First Amendment, alleging that Defendants treated CEF's "Good News Club," a Christian after-school enrichment program, differently than similarly situated, non-religious groups in the District. After the parties settled the case, they moved for the Court to embody the terms of the settlement in a permanent injunction and to enter judgment awarding CEF damages and attorney's fees and costs. Before the Court is the parties' joint motion for the entry of final judgment and a permanent injunction, ECF No. 29, as well as CEF's motion for a preliminary injunction, ECF No. 4, and Defendants' motion to dismiss, ECF No. 21. For the following reasons, the motion for the entry of final judgment and a permanent injunction is DENIED. Because the parties have settled the case, the motion for a preliminary injunction and motion to dismiss are MOOT.

1

## BACKGROUND

CEF establishes Good News Clubs at schools across the country, including in the District. Compl. 5, ECF No. 1.  Good News Clubs meet on school campuses to provide all interested students free religious programing "to encourage learning, spiritual growth, and service to others, as well as social, emotional, character, and leadership development." *Id.* at 5–6.  The District has several policies governing the terms by which community organizations can access school facilities and school-sponsored fora such as the "Backpack Night" literature-distribution forum. *Id.* at 6–13.  The District's policies classify organizations as category I, II, or III, with Category I organizations receiving the greatest access to school facilities and fora. *Id.*  The District categorized CEF as a "Category II" organization, requiring it to pay fees for facility use and preventing it from accessing the Backpack Night forum. *Id.* at 1.

CEF brought suit against Defendants alleging that, by classifying CEF as a Category II organization, they had violated the First and Fourteenth Amendments, as well as the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1–35/99, by treating the Good News Clubs at schools in the district differently than similarly situated, non-religious groups, such as the Boy Scouts, Girls on the Run, and Moline Little League Softball and Baseball. *See generally id.*

On May 7, 2026, the parties reached a settlement during a settlement conference before Magistrate Judge Hanna. *See* May 7, 2026 Min. Entry, ECF No. 28.  Pursuant to this settlement, the parties filed a joint motion for a permanent injunction and final judgment.  The motion asks the Court to enter a proposed Permanent Injunction and Final Judgment, ECF No. 29-1.  The proposed injunction would require Defendants to amend several of their policies, refrain from enforcing them in their current form, treat CEF the same as "similarly situated nonreligious organizations," and otherwise provide CEF "equal access" to school facilities and fora. *See*

2

*generally* Proposed Inj. & Final J.  The proposed order entering final judgment would award $105,351.25 to CEF "as and for actual damages and reasonable attorney's fees and costs."  *Id.* at 5.

## DISCUSSION

Although the parties style the motion as one for a permanent injunction and the entry of final judgment, the Court construes the motion as a single request for the entry of a consent decree.  "A consent decree is a court order that embodies the terms agreed upon by the parties as a compromise to litigation."  *United States v. Alshabkhoun*, 277 F.3d 930, 934 (7th Cir. 2002).  Consent decrees may, but do not always, impose a continuing injunction.  *Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 651 n.7 (1961).  While courts sometimes refer to such decrees as "injunctions" rather than "consent decrees," for the sake of clarity, the Court will refer to the parties' entire request as a proposed consent decree and the portion styled as a permanent injunction as a proposed injunction.

In this case, the parties make four specific requests in their motion for a consent decree: (1) to declare CEF the prevailing party, (2) to award $105,321.25 "as and for actual damages and reasonable attorney's fees and costs," (3) to enter the proposed injunction and declare that, in any future litigation to enforce it, the prevailing party be entitled to recover attorney's fees, costs, and interest, and (4) to dismiss the complaint with prejudice.  *See generally* Proposed Inj. & Final J.

Ordinarily, dismissing a case divests the court of jurisdiction over it.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377–82 (1994).  The mere fact that the parties agreed to settle their case does not mean the court retains jurisdiction to oversee disputes arising out of the settlement agreement.  *Id.* at 378 ("Enforcement of [a] settlement agreement . . . whether through award of damages or decree of specific performance, is more than just a

continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction."). In most cases, settlement agreements are enforced "just like any other contract." *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 489 (7th Cir. 2002). However, a district court may retain jurisdiction to enforce a settlement agreement if it embodies the terms of the agreement in a judicial order such as a consent decree or injunction. *Id.*; *Shapo v. Engle*, 463 F.3d 641, 643 (7th Cir. 2006) ("[A] district judge cannot dismiss a suit with prejudice, thus terminating federal jurisdiction, yet at the same time retain jurisdiction . . . . (An exception is the inherent power of a court that has issued an injunction, even if that injunction ended the lawsuit, to enforce it, as by contempt proceedings.)"). Here, the parties ask the Court to enter a consent decree embodying the terms of their settlement agreement and awarding the agreed damages amount. Doing so would give the Court power to enforce the injunction and damages award through, for example, contempt proceedings even after dismissing the case.

The Court may enter such a consent decree only under certain circumstances. First, the consent decree "must (1) spring from and serve to resolve a dispute within the court's subject matter jurisdiction; (2) come within the general scope of the case made by the pleadings; and (3) further the objectives of the law upon which the complaint was based." *Komyatti v. Bayd*, 96 F.3d 955, 960 (7th Cir. 1996) (alterations and quotation marks omitted). Second, before entering a consent decree, "the judge must satisfy himself that the decree is consistent with the Constitution and laws, does not undermine the rightful interests of third parties, and is an appropriate commitment of the court's limited resources." *Kasper v. Bd. of Elections of Comm'rs of Chi.*, 814 F.2d 332, 338 (7th Cir. 1987). Finally, with respect to the proposed injunction, the decree must satisfy the requirements of Federal Rule of Civil Procedure 65(d). *See Blue Cross & Blue Shield Ass'n v. Am. Express Co.*, 467 F.3d 634, 636–38 (7th Cir. 2006);

4

Fed. R. Civ. P. 65(d)(1) (requiring that every injunction "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required").

The parties have not even attempted to show why it would be appropriate to enter their consent decree, so the Court denies the motion with leave to renew along with a memorandum addressing the *Komyatti* requirements, the *Kasper* requirements, and Rule 65.

For judicial efficiency, however, the Court notes that the proposed injunction does not satisfy Rule 65. First, Rule 65(d)(1)(C) demands that the injunction describe the acts restrained or required without referring to other documents. The proposed injunction would prohibit Defendants from enforcing several of the District's policies, including Board Policy 8:20, Board Policy 8:25, Administrative Procedure 8:20, and Board Policy 8:20E Application. *See, e.g.*, Proposed Inj. & Final J. 2. The proposed injunction describes several upshots of the prohibition, but by referring to the Use Policies instead of describing their content, the precise contours of the acts restrained and required cannot be determined solely by referring to the proposed injunction. *See Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 676 (7th Cir. 2019) ("[A]n injunction must be embodied in a *standalone* separate document." (emphasis added)); *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 619 (7th Cir. 1998) (stating that an injunction must "be precise and self-contained, so that a person subject to it who reads it and nothing else has a sufficiently clear and exact knowledge of the duties it imposes on him that if he violates it he can be adjudged guilty of criminal contempt").

Second, the proposed injunction does not state its terms with sufficient specificity to satisfy Rule 65(d)(1)(B). "[F]airness requires that the litigants receive explicit notice of precisely what conduct is outlawed." *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000). Most

5

notably, the proposed injunction would require Defendants to treat CEF the same as "similarly situated nonreligious organizations" and otherwise provide "equal access" to several opportunities provided by the District. *See* Proposed Inj. & Final J. 2. This language, without more, does not explain what other organizations the access must be "equal" to, and the injunction does not describe what organizations are "similarly situated" or outline the criteria necessary for the Court to know which organizations quality as such. This language is similar in type to the language of an injunction that the Seventh Circuit vacated in *Patriot Homes, Inc. v. Forest River Hous., Inc.*, 512 F.3d 412 (7th Cir. 2008). In that case, the district court enjoined a party from using "confidential information" or "trade secrets" and demanded that such information on computer files and removable media be deleted. *Id.* at 414. The Seventh Circuit reasoned that the injunction failed to detail "the substance of the 'trade secret' or 'confidential information'" to which it applied. *Id.* at 415. Like the injunction in *Patriot Homes*, the proposed injunction fails to specifically describe how Defendants must treat CEF and instead "is a little more than a recitation of the law" that "requires a lot of guesswork on [the District's] part in order to determine if it is engaging in activities that violate the injunction." *Id.* at 415 (collecting cases).

There are other minor issues with the proposed consent decree. Under Seventh Circuit precedent, a plaintiff that settles its claim is considered a prevailing party for purposes of 42 U.S.C. § 1988. *See Hill v. Richardson*, 7 F.3d 656, 657–58 (7th Cir. 1993). The request for the Court to declare CEF a prevailing party is therefore moot. Additionally, while the Court could adopt a consent decree incorporating an agreed damages payment, that would be distinct from an award of attorney's fees under 42 U.S.C. § 1988.[1] In any case, since the parties do not justify the

---

[1] If construed as a motion for attorney's fees under 42 U.S.C. § 1988, the parties' request contains several flaws. 42 U.S.C. § 1988 states that, in cases brought to vindicate a right under, *inter alia*, 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C § 1988(a). "[A] reasonable fee is a fee that is sufficient to induce a capable attorney to undertake

6

entry of the consent decree and because the proposed injunction would violate Rule 65, the

motion is DENIED.

## CONCLUSION

Accordingly, the joint motion for a permanent injunction and the entry of final judgment,

ECF No. 29, is DENIED.  The parties are directed to file, by August 14, 2026, a revised motion

and memorandum explaining why it would be appropriate for the Court to enter the proposed

consent decree, including the requested damages award.  Alternatively, since the terms of the

parties' settlement may be contractually binding apart from any injunction or judgment issued by

the Court, the parties may file a stipulation of dismissal by August 14, 2026.  *See* Fed. R. Civ. P.

41(a)(1)(A)(ii).  Because the parties have settled their dispute, CEF's motion for a preliminary

injunction, ECF No. 4, and Defendants' motion to dismiss, ECF No. 21, are MOOT.

Entered this 31st day of July, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE

---

the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (quotation marks omitted).  The typical manner of achieving this objective is by applying the "lodestar approach." *Id.* at 551–52.  The lodestar approach begins with calculating the "lodestar": "the product of the hours reasonably expended on the case multiplied by a reasonable hourly rate." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014).  The resulting amount may then be adjusted based on a number of factors, such as "the degree of success on the merits." *Id.*  Importantly, this calculation can only be done with documentation showing how many hours the attorneys spent on the case and the reasonable hourly rate in the area for that type of case.

Further, a motion for attorney's fees must comply with Federal Rule of Civil Procedure 54(d)(2)(B), which requires that motions for attorney's fees "state the amount sought or provide a fair estimate of it."  The parties request only that the Court award a lump sum of $105,351.25.  Proposed Inj. & Final J. 5.  They do not distinguish which portion of the award is for damages as opposed to attorney's fees or costs.  Finally, assuming a portion of the lump sum is for "costs," *id.*, the Court will not award costs beyond the agreed settlement amount unless CEF submits a bill of costs including Form AO-133.  *See* Civil LR 54.1(B).