E-FILED
Wednesday, 21 October, 2026 11:01:45 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

CHILD EVANGELISM FELLOWSHIP OF ILLINOIS, INC.,

Plaintiff,

v.

MOLINE-COAL VALLEY SCHOOL DISTRICT NO. 40, RACHEL SAVAGE, and MOLINE-COAL VALLEY DISTRICT NO. 40 BOARD OF EDUCATION,

Defendants.

Case No. 4:26-cv-04038-SLD-RLH

ORDER

In this case, Plaintiff Child Evangelism Fellowship of Illinois, Inc. ("CEF") sues Defendants Moline-Coal Valley School District No. 40 (the "District"), the District's Board of Education, and Rachel Savage, the District Superintendent, for religious discrimination. The parties eventually settled the case and now ask the Court to enter a consent decree in which the Court retains jurisdiction to enforce the terms of their settlement. *See* Mot. Consent Decree, ECF No. 32. For the following reasons, the motion for the entry of a consent decree is GRANTED.

**BACKGROUND**

CEF is a Christian organization that establishes "Good News Clubs" at schools across the country. Good News Clubs provide interested students with free religious programming designed "to encourage learning, spiritual growth, and service to others, as well as social, emotional, character, and leadership development." Compl. 5–6, ECF No. 1. The District has several policies governing the terms by which organizations like CEF can access school facilities and school-sponsored fora. *Id.* at 6–13. The District's policies classify organizations as category

I, II, or III, with Category I organizations receiving the greatest access. *Id.* The District categorized CEF as a Category II organization, requiring it to pay fees for facility use and preventing it from accessing certain fora like the Backpack Night, at which organizations distribute literature to students. *Id.* at 1. It classified other organizations, including the Boy Scouts, the Moline Parks and Recreation Department, and Moline Little League Softball and Baseball, as Category I organizations. *Id.* at 10. In its complaint, CEF alleged that, by classifying CEF as a Category II organization, Defendants violated the First and Fourteenth Amendments and the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1–35/99. *See generally id.*

On May 7, 2026, the parties reached a settlement. *See* May 7, 2026 Min. Entry, ECF No. 28. However, the Court denied the parties' first motion to embody the settlement terms in a permanent injunction, ECF No. 29, because the parties had not filed an accompanying memorandum of law showing how the proposed injunction satisfied the requisite legal standard. *See* July 31, 2026 Order 5, ECF No. 30. The Court also noted that it would deny the proposed injunction because it did not comply with Federal Rule of Civil Procedure 65(d). *Id.* at 5–7.

The parties then filed the instant motion for the entry of a consent decree. This time, the motion includes a memorandum of law supporting the request. The parties aver that the consent decree complies with the Federal Rules of Civil Procedure and the requirements articulated by case law in this circuit. The consent decree includes a proposed injunction and an award of $105,351.25 for actual damages, attorney's fees, and costs. *See* Consent Decree, ECF No. 32-1. The proposed injunction would require Defendants to amend several of the District's policies, refrain from enforcing them in their current form, treat CEF the same as similarly situated

nonreligious organizations, and otherwise provide CEF "equal access" to school facilities and fora. *See id.* at 2–5.

## DISCUSSION

### I. Legal Standard

"A consent decree is a court order that embodies the terms agreed upon by the parties as a compromise to litigation." *United States v. Alshabkhoun*, 277 F.3d 930, 934 (7th Cir. 2002). Consent decrees may include agreed injunctions. *See, e.g.*, *Zurcher Tire, Inc. v. Boland*, No. 1:24-CV-518-CCB-SLC, 2025 WL 1666035, at *2 (N.D. Ind. June 11, 2025). Ordinarily, dismissing a case divests the court of jurisdiction over it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377–82 (1994). The mere fact that the parties agreed to settle their case does not mean the court retains jurisdiction to oversee disputes arising out of the settlement agreement. *Id.* at 378 ("Enforcement of [a] settlement agreement . . . whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction."). In most cases, settlement agreements are enforced "just like any other contract." *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 489 (7th Cir. 2002). A district court may retain jurisdiction to enforce a settlement agreement only if it embodies the terms of the agreement in a judicial order such as a consent decree or injunction. *Id.*; *Shapo v. Engle*, 463 F.3d 641, 643 (7th Cir. 2006) ("[A] district judge cannot dismiss a suit with prejudice, thus terminating federal jurisdiction, yet at the same time retain jurisdiction to enforce the parties' settlement . . . . (An exception is the inherent power of a court that has issued an injunction, even if that injunction ended the lawsuit, to enforce it, as by contempt proceedings.)"). Here, the parties ask the Court to enter a consent decree embodying the terms of their settlement agreement and awarding the agreed damages amount. Doing so

would give the Court power to enforce the injunction and damages award through, for example, contempt proceedings even after dismissing the case.

However, as the Supreme Court has noted, "a federal court is more than a recorder of contracts from whom parties can purchase injunctions; it is an organ of government constituted to make judicial decisions." *Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 525 (1986) (quotation marks omitted). Accordingly, the fact that the parties agreed to seek an injunction when entering into a settlement agreement—even if such an injunction was critical to reaching such an agreement—does not itself entitle the parties to the continuing jurisdiction of the Court. *Kasper v. Bd. of Election Comm'rs of Chi.*, 814 F.2d 332, 338 (7th Cir. 1987).

The Court may enter a consent decree only under certain circumstances. First, the consent decree "must (1) spring from and serve to resolve a dispute within the court's subject matter jurisdiction; (2) come within the general scope of the case made by the pleadings; and (3) further the objectives of the law upon which the complaint was based." *Komyatti v. Bayh*, 96 F.3d 955, 960 (7th Cir. 1996) (alterations and quotation marks omitted). Second, "[b]efore entering a consent decree the judge must satisfy himself that the decree is consistent with the Constitution and laws, does not undermine the rightful interests of third parties, and is an appropriate commitment of the court's limited resources." *Kasper*, 814 F.2d at 338. Finally, with respect to the proposed injunction, the decree must satisfy the requirements of Federal Rule of Civil Procedure 65(d). *See Blue Cross & Blue Shield Ass'n v. Am. Express Co.*, 467 F.3d 634, 636–38 (7th Cir. 2006); Fed. R. Civ. P. 65(d)(1) (requiring that every injunction "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required").

## II. Analysis

When denying the first request for an injunction, the Court instructed the parties to include, with any renewed motion, "a memorandum addressing the *Komyatti* requirements, the *Kasper* requirements, and Rule 65." July 31, 2026 Order 5. The memorandum supporting the motion for the entry of a consent decree does so, *see* Mot. Consent Decree 4–18, and the Court will address each requirement in turn.

### a. *Komyatti*

Any consent decree "must (1) spring from and serve to resolve a dispute within the court's subject matter jurisdiction; (2) come within the general scope of the case made by the pleadings; and (3) further the objectives of the law upon which the complaint was based." *Komyatti*, 96 F.3d at 960 (alterations and quotation marks omitted).

The first two requirements are easily met. First, CEF complains of unequal access to school fora and, more generally, the codification of inequitable treatment based on religion in the District's use policies. *See generally* Compl. This is the same harm addressed by the consent decree. Additionally, on its face, the consent decree fully resolves the dispute. *See* Consent Decree 5 (requesting the entry of final judgment). Second, in CEF's complaint it requested that the Court issue a permanent injunction requiring Defendants to provide equal access to school-sponsored fora, amend District policies to treat CEF the same as similarly situated non-religious organizations, and take other similar actions. *See* Compl. 29–31. This similarity between the consent decree and the initially requested relief means the consent decree is within the scope of the case made by the pleadings.

The third requirement is more complicated. As other courts have recognized, when considering whether to approve a consent decree, "[t]here is some tension in the case law about

how much a district court should look at the merits, if at all." *Henry v. Omoi, Inc.*, No. 25-cv-3151, 2026 WL 636799, at *7 (N.D. Ill. Mar. 6, 2026). To determine whether a consent decree furthers the objectives of the law, a district court necessarily pulls back the curtains of a plaintiff's case to examine the merits. However, in an analogous scenario, the Seventh Circuit has admonished that "[t]he district court should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985); *see also Zurcher Tire*, 2025 WL 1666035, at *2 ("In reviewing a consent decree, a court need not inquire into the precise legal rights of the parties, nor reach and resolve the merits of the parties' claims."). This tension is particularly profound in the First Amendment context. The Constitution creates a "delicate balance between the Establishment Clause and the Free Exercise Clause." *Doe ex rel. Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840, 857 (7th Cir. 2012). When evaluating a consent decree that governs a public school district's treatment of religious organizations, the Court is acutely aware that it has a responsibility to ensure that it does not place its weight behind a consent decree that would either prevent religious students and organizations from freely speaking and expressing their religion or serve as an implicit endorsement of a particular religion by the school district. This is always a delicate task—much more so at this procedural stage, without benefit of full briefing or an adversarial presentation of the constitutional merits.

The parties point to *Good News Club v. Milford Central School*, 533 U.S. 98 (2001), as evidence that the consent decree furthers the objectives of the First Amendment. Mot. Consent Decree 6. In that case, the Supreme Court held that a school district violated the Constitution when it barred a Good News Club from using school facilities while allowing other organizations, including the Boy Scouts, to use school facilities for the purpose of teaching moral

values. *Good News Club*, 533 U.S. at 108, 120. It held that the Establishment Clause did not support the exclusion of the Good News Club from school facilities because the school also made its facilities available to other organizations and "the Club's meetings were held after school hours, not sponsored by the school, and open to any student who obtained parental consent." *Id.* at 113. Since that decision, courts have regularly affirmed that school districts violate the First Amendment when they impose different facility access rules for religious organizations as against the Boy Scouts and Girl Scouts, and that there is no Establishment Clause concern that prevents the school districts from treating the organizations equally. *See, e.g.*, *Child Evangelism Fellowship of Minn. v. Minneapolis Special Sch. Dist. No. 1*, 690 F.3d 996, 1002–04 (8th Cir. 2012); *Child Evangelism Fellowship of Haw., Inc. v. Haw. State Dep't of Educ.*, No. 24-00034 MWJS-WRP, 2024 WL 3233996, at *4, 8 (D. Haw. June 27, 2024); *Child Evangelism Fellowship NorCal, Inc. v. Oakland Unified Sch. Dist. Bd. of Educ.*, No. 24-cv-08945-HSG, 2025 WL 2380965, at *6 (N.D. Cal. Aug. 15, 2025).

The Consent Decree would require Defendants to provide CEF the same access to District facilities and fora as "similarly situated nonreligious organizations, including but not limited to the Boy Scouts, Girl Scouts, and Cub Scouts." Consent Decree 2. Without deciding the merits of the underlying dispute, the Court finds the caselaw cited above persuasive. Treating CEF the same as the Boy Scouts, Girl Scouts, and Cub Scouts furthers the purposes of the First Amendment, including "securing religious liberty." *Lee v. Weisman*, 505 U.S. 577, 605 (1992) (Blackmun, J., concurring).

**b. *Kasper***

*Kasper* requires that, before entering a consent decree, "the judge must satisfy himself that the decree is consistent with the Constitution and laws, does not undermine the rightful

interests of third parties, and is an appropriate commitment of the court's limited resources." *Kasper*, 814 F.2d at 338. The Court's prior conclusion that the consent decree furthers the purposes of the First Amendment is dispositive of the first two issues: it shows (1) that the Consent Decree is consistent with the First Amendment and, (2) that it therefore also advances the interests of third parties, who universally have an interest in First Amendment protections, *see Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) ("[I]njunctions protecting First Amendment freedoms are always in the public interest."). The Consent Decree's proposed injunction also requires the District to comply with certain procedures when evaluating facility use applications, Consent Decree 4–5, but such procedure requiring timely evaluation and an opportunity for appeal would only benefit third parties.

The Court also finds that entry of the Consent Decree—including the accompanying permanent injunction—is an appropriate use of the Court's limited resources. The parties have indicated that the viability of their settlement depends on the Court's approval of the Consent Decree. Mot. Consent Decree 3 n.2. Thus, while continued jurisdiction to enforce the consent decree creates a possibility of future litigation, it certainly avoids immediate, potentially protracted litigation in this case. As a result, approving the Consent Decree would be consistent with the general judicial policy favoring out-of-court settlements as it would "lighten the judicial caseload," *Donovan v. Robbins*, 752 F.2d 1170, 1177 (7th Cir. 1985).

**c. Rule 65(d)**

Federal Rule of Civil Procedure 65(d)(1) requires that an order granting an injunction: "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." When denying the parties' first request for an injunction, the Court

noted that the proposed injunction was not sufficiently specific and problematically referred to other documents when describing the acts required. July 31, 2026 Order 5–6. The revised proposal has remedied these concerns and is now consistent with Rule 65.

The Consent Decree states that it is for the purpose of ensuring the District's compliance with the First and Fourteenth Amendments and securing CEF's equal access to District facilities. Consent Decree 1. This satisfies Rule 65(d)(1)(A).

Injunctions must state their terms specifically so that "litigants receive explicit notice of precisely what conduct is outlawed." *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000). The Court rejected the first proposed injunction because it required the District to treat CEF the same as "similarly situated nonreligious organizations" without "describ[ing] what organizations are 'similarly situated' or outlin[ing] the criteria necessary for the Court to know which organizations quali[f]y as such." July 31, 2026 Order 6. The Consent Decree has addressed this concern by providing examples of "similarly situated" organizations: the Boy Scouts, Girl Scouts, and Cub Scouts. Consent Decree 1. This illustration of what organizations are similarly situated gives the District clear guidance on how to classify CEF and gives the Court a clear understanding of what the injunction requires. Although the Consent Decree does not exhaustively state what organizations are similarly situated or comprehensively outline what provisions must be present in the District's amended policies, the level of specificity is "such that a reasonable person could understand what conduct is proscribed." *Medtronic, Inc. v. Benda*, 689 F.2d 645, 649 (7th Cir. 1982). As the Seventh Circuit has noted, "Rule 65(d) does not require a torrent of words when more words would not produce more enlightenment about what is forbidden." *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1432 (7th Cir. 1985).

Accordingly, the Court finds that the Consent Decree is sufficiently specific to satisfy Rule 65(d).

Finally, the Consent Decree also describes the acts required and prohibited without referring to outside documents. It makes general references to the District's use policies, *see, e.g.*, Consent Decree 4, but by describing the nature of the amendments required instead of the specific sections of the policies at issue, the Court can now enforce the injunction even if the sections of the use policies are re-numbered. As such, the Consent Decree is sufficiently self-contained "that a person subject to it who reads it and nothing else has a sufficiently clear and exact knowledge of the duties it imposes on him." *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 619 (7th Cir. 1998).

**CONCLUSION**

Accordingly, the joint motion for a consent decree, ECF No. 32, is GRANTED. The Consent Decree, ECF No. 32-1, is APPROVED and will be entered in a separate order.

Entered this 21st day of October, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE